Good afternoon. Mr. Adler. Adler, yes. May it please the Court, I'm Derek Adler from Hughes, Hubbard & Reed for the Joint Administrators for the Nortel debtors in the region of Europe, Middle East and Africa, the so-called EMEA debtors, and I've reserved three minutes for response time. Your Honor, the agreement here, the agreements for being an enforceable arbitration clause. It's an agreement in writing. It indicates what disputes should be arbitrated. Those are disputes about how to allocate the proceeds from the sales of the Nortel businesses. And it reflects the intention of the parties to submit disputes about allocation to some form of binding private dispute resolution process rather than court procedure. You know the problem I have with all the arbitration agreements that I have looked at or have reviewed or have studied, I always see the word arbitration in the provision that provides for arbitration. And that's what strikes me about this case. Your argument is you want us to infer that the parties agreed to arbitration from the language of the document without having used the word arbitration itself or having set up the type of arbitration or the procedure for an arbitration procedure. Could you talk about what language in this agreement affords you the right to arbitrate? Certainly. We say that that comes from section 12B of the IFSA, the IFSA agreement, which is at page 1560 in the record. That's in dispute resolvers? That's correct, yeah. It actually has to do with the escrowed funds. And it says, I mean the term is used in several different places, dispute resolvers, but 12B I think is the heart of it, which says in no case shall there be any distribution from the escrow account in advance of either one, agreement of all of the selling debtors, or two, in the case where the terms of the protocol as defined below applicable to the state. Which takes you to C. Which takes you to C, which talks about negotiating the binding procedures. Negotiating as soon as reasonably practicable following the execution of this agreement. Binding procedures, Your Honor. So negotiate following execution of this agreement. So implicit or explicit is that it's not in this agreement. Your Honor, we say that there is an agreement to agree here about what the procedures are that would apply. An agreement to agree is not an agreement to reach the ultimate goal that you would like to reach, or you may even have agreed that ultimately you will reach, although it's not in here. Your Honor, we accept that. But the agreement to agree here is about the procedures that would apply in the arbitration. How do we know that? I'm sorry? I mean, other than you're saying so, how do we know that? Well, it uses that term here. It says that a protocol shall provide binding procedures, that those words are right there in 12C. Why does binding procedure necessarily refer to arbitration as opposed to a court proceeding? Court proceedings are binding procedures. They are binding procedures, certainly, Your Honor. But the parties don't negotiate what the procedures are that apply in court cases. That in itself makes it clear that dispute resolvers here was understood by the parties and intended by the parties to be something apart from court proceedings, some kind of supranational proceeding. If there is a dispute, if the parties can't reach agreement, then you go to 16B, don't you? And again, there's where court and courts are used in terms of dispute resolvers. I don't see the word arbitration in here either. Well, no, that's correct, Your Honor. The word arbitration doesn't appear here, but this is a typical general jurisdiction clause which, when it appears in an agreement that also provides certain matters or to be arbitrated, is construed as providing for ancillary. Well, it could be arbitration. It could be court. Dispute resolvers is not defined. It's a very broad term, and that's what the parties were to negotiate after the execution of this agreement. Under the case law construing the Federal Arbitration Act, the only ingredient that's needed to make it an enforceable arbitration clause is that the parties intended it to be some form of arbitration. Well, that's where there was an arbitration clause. But, Your Honor, there are so many cases where the parties have been vague about this, where they've specified, first of all, there are plenty of agreements that don't use the word arbitration. They say a physician, an expert, a government official. We've cited these cases in the brief. Certainly the word arbitration itself doesn't have to be used. There are plenty of cases where the parties have said that they will negotiate further about who the arbitrators will be and what the procedures will be. But there's nothing like that. No dispute resolvers is not hinted at in any way, other than perhaps in 16b, and that would be courts. Well, I mean, it was accepted, I think, by the court below, and I think by the parties on this appeal, that this does contemplate that there will be dispute resolvers. And so the crux of the issue decided by the district court, by the bankruptcy court, was can that include courts or not? Why do we take – why should we accept your take on the language of this agreement and not the other side when it talks about Section 16? And that section says that each party agrees to submit to the non-exclusive jurisdiction of the U.S. courts claims, actions, proceedings of such parties. In other words, you all agree that you will submit all of your claims and actions and proceedings, your differences, to the courts. And this section mentions the word courts six or seven times. I don't see the word arbitration mentioned anywhere. Your Honor, in my experience with agreements that have an arbitration clause, there is often a clause like this which doesn't have an express carve-out for arbitration. We've cited cases on that which say that where you have a general jurisdiction clause like this, it's construed to mean in an agreement that also calls for arbitration of certain – But that's an agreement that calls for arbitration. Right. So you don't get to – But you don't have that here. Okay. Well, I mean, if you find that there is no arbitration agreement in Section 12B or Section 12 of this, then you do look at Section 16B here, which we say doesn't actually apply to disputes about allocation. It refers to disputes about matters agreed in this agreement. Well, this only applies if the parties cannot reach agreement on allocation, correct? Or there are disputes that need be resolved. Your Honor, we don't – So if they can reach an agreement on allocation under 12, you don't get to 16B. Your Honor, that interpretation is – the interpretation that 16B was intended to be the fallback in the event that they didn't reach agreement under Section 12 is not consistent with the overall terms of this agreement and the related agreements, because this agreement, first of all, doesn't have anything to say about how allocation is decided. In fact, it's got several provisions, Section 10A and Section 12F, which say nothing herein affects the substantive rights to an allocation of the sales proceeds of any of the debtors. Is your argument that there's some ambiguity in this contract that should be resolved in your favor? Your Honor, we think – Or is it that the plain language clearly says that arbitration is provided for? Your Honor, we think the term dispute resolver is such an odd term that it is actually can be read by itself to mean something other than court procedure. All right. However, if you look at the other provisions, some of which you've pointed out here, such as the fact that the parties are to negotiate for the procedures that are going to apply by the dispute resolvers, which is not consistent with a court proceeding, the parties are going to may appoint more than one dispute resolver. The parties choose the dispute resolvers. Is the idea that the parties agreed to arbitrate so clearly that it jumps out at you? I mean, is it really here in this document? The point I'm saying is that even if you find that it's not, these other provisions create doubt. They do create ambiguity in the terms of – What section was that of the agreement? 12B, I think I was just – Where do you say the parties will make these agreements about the dispute resolvers? It's in sections 12A through C. 12B. Yes, 12A through C. 12B. B is the core one, but C says that they'll negotiate about the procedures. Following the execution of this agreement. Right, but this is about the procedures. I want to ask you if you're suggesting that there's ambiguity in this contract which allows us or that you're suggesting we should look at extrinsic evidence or plural evidence. I mean, that is what we are suggesting as the secondary argument to reading the plain meaning of this. Secondary. Oh, plain meaning suggests that you were entitled to arbitration? We believe that, but in the alternative that the – You've got to be plainer than what this – Plain reading says look at this section entitled arbitration and here are the procedures and here's how you select the arbitrators, et cetera. Your Honor, there are many, many clauses under the FAA, under the Federal Arbitration Act, that have been enforced that don't supply those kind of terms. It seems to me that you had very sophisticated people involved in these transactions who know how to make an arbitration clause, how to be clear about it, how to put it in a contract. Your Honor, they were trying to get these sales done. If that's what they wanted. Your Honor, they were trying to get these sales done. The parties around the world needed to know that there was going to be some procedure in which their various rights would be protected as to how the proceeds would be allocated. It was very important to do this work. It just doesn't seem to me that arbitration was left out by accident. It may be that that's what the parties wanted, no arbitration. Your Honor, the extrinsic evidence which we put before the court and which was undisputed shows that the parties always intended arbitration. That was all they negotiated about. Did you bring that up before the Bankruptcy Court or the Canada Court? Did we bring it up? Yes, we did, Your Honor. We asked the local court. That was when you filed the cross-motion. Correct. We filed the cross-motion. We pointed out that the statements that were made by the parties to the court at the time of approving this agreement indicated that it would be in some form of a There is a procedure in bankruptcy by which you can ask that matters be referred to arbitration. Yes, there is, Your Honor. But that was never invoked. Well, we made – I'm not sure it was required here. We just made a motion to compel arbitration. You also – the bankruptcy judge referenced bankruptcy 9019, but not 9019C, which permits the Bankruptcy Court to submit a matter to final and binding arbitration. It confirms that there was no binding agreement to arbitrate in the IFSA agreement. Your Honor, that argument is circular because if the agreement provides for arbitration, it was approved. But it confirms – it confirms the view that this is a plain-meaning analysis that we engage in. What does the agreement say? It's very clear it doesn't call for arbitration. Well, the – I mean, the IFSA was approved under Section 9019, and there are cases we've – Not 90 – no, but not 9019C. Your Honor, we've cited several cases where arbitration agreements have been approved without invoking the specific subsection. There are different subsections in 9019. The order entered by the court approving the IFSA says that it was under 9019. All of the notice requirements were met. The counsel for the – Yeah, but the court says it's not – doesn't see a hint of arbitration. Your Honor, that's the court's interpretation of – Of the contract. Of its order. The contract is not under the Shenango case. The contract itself is not an order of the court. That's entitled – No, no, no. But when the bankruptcy judge determined that there's nothing about arbitration in the IFSA agreement and he's not going to compel arbitration, he didn't say that the agreement does compel arbitration or even mentions it. He was not – he was not moved by your position. He – Your Honor, the bankruptcy court appeared to believe that this was not an enforceable arbitration clause because we would have to come back with the procedures to be used in the arbitration. But there is ample authority under the Federal Arbitration Act. The Federal Arbitration Act provides for how to deal with that situation. The court appoints the arbitrator. I have a couple of questions on – about your brief on the – it's divided into two general sections. One is the bankruptcy court erred in holding that the IFSA does not contain an enforceable arbitration clause. Then the next section, 2, says the bankruptcy court erred by interpreting IFSA to provide for a joint trial of the allocation dispute rather than by arbitration. It struck me that the only thing we decide, and then you go on, it says it's a violation of due process to force parties to engage in a process that leads to two parallel independent judgments. Isn't the only thing we decide is whether the court was correct or not correct in denying an order for arbitration. What happens if it was correct is not before us. In other words, the statute provides you can appeal an order denying an arbitration motion. And we can hear that. Okay, let's say we affirm. Okay, it's affirmed. No arbitration. What happens next is not within our jurisdiction, is it? Your Honor, the judge denied our motion to compel arbitration because he found that instead of arbitration, and he looked at both section 12 and section 16 here, because of that, he denied arbitration because he said the parties agreed to have hearings in a joint procedure where the two judges issue separate judgments about this. So what you're saying is that to the extent that any order relates directly to the denial of the motion for arbitration, we can consider that issue. Certainly. And in addition, this court plainly has jurisdiction to consider anything that's within the order that's presented for it, even issues that are not part of it. Well, I know that's true when we allow an interlocutory appeal and we exercise our jurisdiction on a certified question. But this is an appeal as of right rather than, in other words, you have a right to appeal or denial of a motion for arbitration. Does that rule apply there, too? Well, but it was also certified directly to this court. I thought we denied certification. Only as to the second question. Certified as to arbitration, and I believe that within that, that does give you jurisdiction to consider the whole order that's before you. Let me ask you one final question. Well, you have a rebuttal also. But the Canada courts have already decided to go forward with judicial proceedings. What if we were to agree with you on the arbitration issue? What happens next? You have Canada courts proceeding with judicial hearings with regard to the escrow counts, and you would be going to arbitration. How is that going to work? Your Honor, presumably if the U.S. court can't participate in the joint proceeding, then the Canadian court would not proceed with those. The motion to compel arbitration was brought with all parties appearing in the U.S. action. You mean the Canada courts would be bound by this court's decision as to arbitration? We believe the Canadian parties would be bound to participate in an arbitration. Well, the Canadian court has denied arbitration there. Oh, that was my point. They've decided that they're going to go ahead with judicial proceedings. That's correct. You're going to have two different proceedings involving the same money, the same funds, in two different countries. Your Honor, that's already what we have, because the procedure we're on leads to a train wreck with two separate judgments and no way to resolve the two separate judgments. The reason we're here is to try to avoid that train wreck. Well, of course we could avoid the train wreck if we have one format, either judicial proceedings or arbitration. Which is what we said to the court below. But I don't know that the Canada courts are bound by our decision with respect to arbitration. Your Honor, we don't see that that's a... Or are we to agree with your position? I understand, but we don't see that that's a reason for this court or the court below to abdicate its responsibility to decide the matters before it. All right, good. You have a March trial date here. That's correct. Thank you, Mr. Allen. We'll get you back. Mr. Szabo? Thank you, Your Honors. Howard Szabo, representing appellees to U.S. debtor. As was just correctly framed during the argument, there really are two separate but related issues here. First, does the IFSA include a binding arbitration agreement for allocation disputes? Secondly, did the Bankruptcy Court, under Bankruptcy Rule 9019C, approve an arbitration clause when it approved the IFSA? And as to that latter point, I just want to emphasize, this is not a situation where two parties entered into a contract years ago and they're coming to the Bankruptcy Court. This Interim Funding Settlement Agreement only exists because it was approved by the Bankruptcy Court here in the U.S. and the Bankruptcy Court in Canada. And both of those judges have said, when we were approving the Interim Funding Settlement Agreement, no one told me this was an arbitration agreement, I did not think it was an arbitration agreement, and I most certainly did not approve one. Well, that's what they said, but doesn't Section 12B bind the parties to have their disputes settled by a dispute resolver, and doesn't that include arbitrators? A couple answers to that. First of all, Section 12B is not a dispute resolution clause in any shape. Well, why does it say – what's a dispute resolver? Your Honor, a dispute resolver unambiguously includes courts, includes lots of different things. It's a broad term. In arbitrators. Yes, it does, Your Honor. It unambiguously includes courts and unambiguously includes arbitrators. Your Honor, Section 12B is an escrow provision. If you were going to include an arbitration agreement, these sophisticated parties with their sophisticated counsel would have had a section saying arbitration agreement. This is – you wouldn't put two words buried in what is an escrow provision and say, aha, that's the arbitration agreement. And Mr. Adler had a very telling comment at the beginning of his argument when he pointed to 12B, putting aside that it's not even a dispute resolution clause, it's an escrow clause, and he said, 12B shows the parties agreed to a private dispute resolver. That is not what 12B says. He's putting the word private in front of it to narrow the words that, in fact, were used by the parties. Does 12B have any significance at this point, given that there's been a failure to resolve any of the protocols, to resolve a protocol for the distribution or allocation of the escrow assets? I think the only significance it has is that the Canadian court and the U.S. court, who only have jurisdiction to resolve this, have said, you guys couldn't agree. It's going to be these two courts. These two courts are going to resolve it. And you come at that two ways. A, they said under Section 16, you've already agreed to this jurisdiction. And secondly, we're going to be the dispute resolvers. Dispute resolver unambiguously includes a court. So this money is going to come out of the escrow, either if the parties, knock on wood, manage someday to agree on allocation, or it's going to come out of escrow in the manner in which the Canadian and U.S. courts agree. Now, doesn't, don't you only get to 16b via 12c from 12b? I think that 16b is a fallback provision. I think it's true. Don't you have to go through 12c first? I think the parties had to go through 12c. That's what I mean when I say you. I mean the parties have to go through 12c and try to, as quickly as possible, establish a protocol here. And the parties tried. And if they can't resolve that, if there are disputes following that, as to allocation or even the protocol itself, you go to 16b. That's correct, Your Honor. Yeah. And the parties tried so hard for well over a year. The bankruptcy judge makes very clear. He says very, very good things about counsel on both sides. And, Your Honor, one key point in this, to come back to 9019c for a minute. You know, we've heard Mr. Adler say, well, the agreement's ambiguous. I don't think it is ambiguous because I think you don't get an arbitration clause out of an escrow provision, and in any event, dispute resolver unambiguously includes courts. What if we found something in his argument that there is some ambiguity, especially with regard to 12b? Is there any – is there a record of the parties negotiating surrounding the words dispute resolver? Your Honor, the record shows that subsequent to this agreement, the parties tried to engage in all sorts of negotiations, and there were multiple drafts of a 30-page single-spaced protocol where they were negotiating everything. And they were trying, indeed, at times they were trying to negotiate a panel that would resolve this, and we had arguments over would there be witnesses, would there be discovery, would it be final? Endless – you can see the protocols. They take up – I'm showing about six inches of the Joint Appendix here. At some point, and in part because the Joint Administrators were insisting that their claims be included, there were all sorts of disputes. The parties said, we can't agree this way. Let's try to negotiate something with the courts. And that's when the Joint Administrators said, we're not going to do that. And so the parties did negotiate something. This is an important point because the Joint Administrators say, parties don't negotiate court procedures. That's what he's claiming creates the ambiguity, because 12c says you're going to negotiate a protocol with procedures. It's exactly what the parties did do here. When the courts ruled there's no arbitration agreement, the parties sat down and they negotiated a very detailed protocol with discovery procedures that apply in both courts, with order of when things are going to be heard in the joint trial and how. It goes on for pages and pages. It was negotiated by all parties, agreed to, and so ordered by the courts. It's a perfect example of what this agreement envisioned. And they did negotiate procedures, except procedures for a joint trial. What I was going to say on the ambiguity point is – sorry. The bankruptcy court denied the motion to compel arbitration in April of 2013. That's correct. And the negotiations ended in the summer of 2010. Had ended in the summer of – okay, forget about that. The negotiations ended in the spring of 2011, Your Honor. Okay, I have it. It's the summer of 2010. You mentioned that the bankruptcy judge had made some comments about the order that he signed denying the request for arbitration. What significance is that? I mean, should we consider what the bankruptcy judge's feelings are about whether he authorized arbitration or not? Well, I think in this case, because the if-so is unambiguous, and I believe the order is unambiguous, I don't think the court needs to go outside either the contract or the order. But the law is clear. If you're going to look at the judge's order – put aside the agreement for a minute. We're just talking about the order in 9019C. This court has said in cases, in the Shenango case, the Supreme Court has said that appellate courts should give lower courts wide berth to interpret their own order, and their own interpretation of their order is entitled to substantial deference. I believe that's the term that's used. And here, the bankruptcy court judge said, I know what I approve. Nobody told me I was approving an arbitration agreement. Look at my order. When I talk about 9019, the only time I talk about 9019, I'm referring to approving the settlement. We should remember that this is called – everybody says the if-so because it's easier to say. It's the Interim Funding and Settlement Agreement. A principal part of this agreement was to settle emergency funding needs that Canada needed and to settle funding disputes between all three of the estates. But if we agree with Mr. Adler and we were to say that, yeah, it's ambiguous and the record suggests that arbitration is okay under 12B, the Canadian courts have decided to go ahead with judicial proceedings. That's correct, Your Honor. How would that work out if we were to say that arbitration is okay and judicial proceedings are okay in Canada? Your Honor, that may be the train wreck that Mr. Adler fears. I'm not saying that this court is bound by the Canadian court's ruling, but I think in this instance it would be a difficult situation, right, because Canada has concluded the Canadian court and the Canadian appellate court. I don't see how it's going to be workable. But fortunately, we don't have that issue here, I hope, because I think the agreements are unambiguous in the score. I don't have any questions. Thank you very much. Thank you, Your Honor. Mrs. Elbow, Ms. Millett. Please support Patricia Millett on behalf of the Official Committee of Unsecured Creditors and the Nortel Networks in this case. There are a number of questions about what if we decide that the word dispute resolver is ambiguous. And to get directly to that question, first of all, it is not ambiguous. What it is is broad. It was a deliberate, conscious placeholder, because what was going on in this case was a determination that they needed to sell assets quickly in order to maximize the value of this estate for creditors and to maximize the opportunities for successful rehabilitation through the bankruptcy process. And they couldn't spend the time trying to decide the details of the allocation process as well. So it was a deliberate placeholder. And one thing that's particularly important to look at is it doesn't just say dispute resolver, which shows you there wasn't even an agreement on that. Look at the word right in front of it, relevant dispute resolvers. What meaning do you give it, though? I mean, you say it was deliberate, but deliberate in what sense? Deliberate in the sense that we're not deciding who's going to make this determination or how it's going to be made. But that would suggest that it could be arbitrators. It was a specific decision not to decide that question. That's what I will give you. It's almost like in sports when they say, you know, we'll do a trade for two players to be named later, right? This was decision makers, dispute resolvers, to be identified later. And that could be courts. It could be arbitrators. And the critical problem with their argument about ambiguity is it ignores the word relevant, which preserves the ability to actually have different dispute resolvers for different issues. It ignores the fact that you have to look at a word in context. You don't get an arbitration agreement by picking up a document and finding one ambiguous word and saying, aha, it could mean arbitrators. That means there's an arbitration agreement. You have to have essential terms. And particularly because this is a bankruptcy case where notice, not just between the parties, but notice to creditors and public is vital. And this is not a private agreement that's negotiated. This was post-petition filing. Their decision was let's get these sales, and then if we can find a way to allocate, we will attempt to agree. Again, there's talk about 9019C. It doesn't say we'll agree. It says we will attempt to agree. And that's how you end up with both 16B as the default mechanism, but even if you didn't have 16B, these are ongoing bankruptcy proceedings. Did you say this relates strictly to the sale of the assets and they wanted to do that very quickly, not to the allocation of the assets? Well, the whole agreement, the Interim Funding Settlement Agreement, and that's why it was 9019A not C, it's a settlement agreement. It was about interrelated activities that had to happen. And the main function was they wanted to do the sales, international sales here to increase the size of the state, but there was also a funding. Transfer pricing issues were addressed. Funding money was transferred. All of that had to be approved by a bankruptcy judge. And the notion that you can sort of hide elephants in mouse holes and find an arbitration that way in a bankruptcy decision is exactly contrary to 9019C and the entire function of the bankruptcy process. But the other thing to keep in mind is, as Judge Berry noted, there were two years' worth of efforts here by parties to agree on this process. And what the appellants are trying to do here is to get from this court the arbitration process they couldn't get through negotiations for two years. And you don't seize upon a document specifically by its terms, reading all the words in context, not just taking dispute resolver and looking at it in isolation, looking at the whole document in context. That would be a point worth considering. Were there negotiations for arbitration throughout these proceedings? There were negotiations for all manner of issue. And that's why I said the point is that people couldn't even agree on what the scope would be. There was a big debate about intercompany claims, EMEA's claims against Canada, whether those would be part of it, how they would come in. And that's why I think the word relevant dispute resolver shows that there wasn't even agreement that there would be one particular mechanism for deciding this. But I would refer you in particular to pages 3732 through 3735 of the joint appendix. And that is after a year of these negotiations, a list of 29 items that had not yet been agreed upon, and 29 that each had subcategories, mind you. Four single-spaced pages that identified things they still hadn't resolved that were absolutely fundamental to a bankruptcy arbitration. And do you know what? It talks about mediation. There's references to courts. There's references to panels. There's references to which issues will be in, which issues will be out. The word arbitration isn't in there, but even if it were, that's not an arbitration agreement. That is people talking about it. And even if all we had talked about for two years was arbitration, which that record shows is not accurate, even if that's all we talked about, enforcement of an arbitration agreement is fundamentally about consent. And if you don't agree, there's no penalty. If you don't agree on arbitration, you're in the court process. It's an ongoing bankruptcy, and this court doesn't force the agreement on the body. I disagree with Mr. Adler's statement that you don't have to specifically reference arbitration to have an arbitration agreement. We don't disagree with that, but you have to have the essential elements of an arbitration agreement. And in bankruptcy. And what would those be? In particular, in bankruptcy, I'll give you the most fundamental one you have to have, and that is a court order under 9019C that says I'm approving this as an arbitration. And approving a settlement is completely different. Understand what this arbitration approval would have been. It would have been a ceding of bankruptcy authority over a most fundamental bankruptcy decision, and that is the allocation of the funds to the different claimants. That's core of bankruptcy proceedings, and to cede that to an outside-the-bankruptcy-court process is going to require ensuring that there is notice to all parties involved, including the creditors, which we are most concerned about. Basic elements of process. Who will decide what? Again, the scope here wasn't ever agreed upon. Who will decide what? And for bankruptcy information, for bankruptcy purposes, what information we will have access to was an important issue that was under debate. That might not be in other arbitration cases, but it's very important that this court understand in deciding this, specific rules governing bankruptcy determinations, which is a much higher standard. Good, Ms. Miller. Thank you very much. Thank you, Your Honor. Mr. Adler. Thank you, Your Honor. Several of the questions in the discussion we just heard concerned the extrinsic evidence, the evidence about what was meant by these terms in the negotiation of the parties. And with respect, I have to correct several things that Ms. Millett just said. The first thing she speculated about was the reason for choosing the term dispute resolver, and she suggested that that was intended to be broad and as a placeholder, which could encompass many things. We've traced out in our papers a history of why that term was chosen. It comes from a pre-IFSA agreement between the parties when they were trying to arrange what this looked like, they began those negotiations before the protocol, and the word dispute resolver was chosen because it was contemplated that this dispute resolver might be an accounting firm or another expert, a non-lawyer, a non-traditional arbitrator. And that is why the term dispute resolver was chosen. And under the FAA, that is an enforceable arbitration clause. It doesn't have to be an arbitrator or a lawyer or anything like that, as long as it's some form of private dispute resolution process. Well, I don't know that that turns it into an arbitration clause. I think Ms. Millett said it can include an arbitrator. She did say that, but she said that it was intended to encompass a broad range of possibilities, as if the intent of the parties was to encompass possible court proceedings. And that's not in the record here. That's contrary to what we see in the record that evolves before the IFSA. She also discussed the party's course of performance under 12C here, where they were negotiating about what the protocol would look like. And contrary to what she said, and I believe this is unrebutted in the record, every draft, every discussion about what the protocol would look like included some form of selection of private individuals to decide this dispute. And the final draft that she was referring to said, quite reasonably, that it would be three panelists, three members of an arbitration panel, one chosen by each of the three spheres of influence here. Now, of course, that could have worked its way into the actual agreement. It could have, yes. Yes, but the parties had not decided who the arbitrators would be, who the individuals would be at that time. They did leave that to be negotiated, but that's not an essential ingredient for an arbitration clause. There was also discussion just now about what the judge knew. In the judge's comment, no one told me this is an arbitration clause. Well, at the approval hearing for the IFSA, counsel for the U.S. debtors referred to the IFSA as creating an allocation process that will be by a fair and reasonable and independent body. The French court, when they approved this, specifically said that the allocation would be by a neutral arbitrator. Okay. We'll have to finish up, Mr. Adler. Thank you. And Judge Gross himself, in a subsequent decision which was appealed to this court, said it regarded this as having created a process where things would be decided in a single cross-jurisdictional forum. Just one final word here, Your Honor. You mentioned the trial date we have in March. Ordering arbitration will not delay that date. All of the discovery that's gone on, all of the pleadings that have been exchanged can be used in arbitration. We are offering the quickest way to get through this and pay the creditors here because the procedure that the court has ordered leads to a deadlock, and unfortunately we will be back here in front of you again in a year or more, figuring out what to do with two competing judgments from the two courts. Thank you very much, Mr. Adler, Mr. Zalbo, and Ms. Millett. Thank you. We'll take the case under advisement and we'll recess. Thank you.